CITY OF NEWARK, PLAINTIFF, v. SUE CORPORATION, DEFENDANT.

Essex County Court

Decided October 25, 1972.

*Mr. Irving R. Venokur,* Assistant Corporate Counsel, for Plaintiff.

*Mr. Walter R. Cohn* for the defendant (*Messrs. Cohn & Turk,* attorneys).

WIENER, J. C. C., Temporarily Assigned. This matter comes before the court on appeal from the Municipal Court of the City of Newark and was heard *de novo* on the transcript below, as provided for in *R.* 3:23-8(a). Both sides filed briefs in accordance with *R.* 3:23-8(b). The question before this court is: What are the responsibilities of an owner as to the maintenance and safety of real property where possession of the premises have been taken by the municipality which has purchased the tax sale certificate under *N. J. S. A.* 54:5-53.1?

The pertinent portion of the statute reads:

> Whenever a municipality has heretofore or shall hereafter become the purchaser of any lands at any tax sale and the certificate of sale has been or shall be recorded in the manner provided by chapter five of Title 54 of the Revised Statutes, such municipality shall be entitled to immediate possession of the property sold and described in the certificate and to all the rents and profits thereof while the holder thereof, until redemption, but all rents and profits collected by such municipality shall be credited on the amount due upon said certificate of tax sale and for subsequent taxes, assessments or other municipal charges assessed against said lands and when the total amount due for the same, including all interests and costs, has been paid, the said lands shall be redeemed from said tax sale.

Sue Corporation, defendant below, owned a six-family dwelling located at 786 Hunterdon Street, Newark, New Jersey. Prior to 1967 Sue was in default on its real estate taxes. The City of Newark held a tax sale, became the owner of the tax certificate and recorded it in the Essex County Register's Office on November 9, 1967. In September 1969 the Newark tax collector commenced collecting rents from the tenants, to be "credited on the taxes, assessments and other Municipal charges assessed against said lands." Newark continued in possession and collected rent until May 1971, at which time the premises had deteriorated to the extent that all tenants vacated. A Newark building inspector inspected the premises on June 22, 1971 and served the first notice on Sue July 6, 1971. Thereafter Newark brought the present charges in the Newark Municipal Court, to wit:

four complaints alleging structural defects, debris, hazardous conditions, vacancy, lack of security and fire hazard, to which Sue pleaded not guilty. Sue was found guilty on all four complaints and fined a total of $1,500. This appeal followed.

In their briefs counsel on both sides see the issue as one of a constructive trust. Sue says that Newark held the land as a constructive trustee and as such should have maintained the property. Newark counters with the argument that Sue had legal title and Newark's possession and abandonment removed it from any responsibility for the maintenance and safety of the premises.

The court finds both Sue's "constructive trustee" and Newark's "legal title argument" nonpersuasive. Research of the authorities finds no reported case on point with the instant matter. There is no reason why basic real property law and fundamental fairness should not apply. Newark purchased the certificate in accordance with *N. J. S. A.* 54:5–32, which provides that "the sale shall be made in fee to such person as will purchase the property, subject to redemption." Thereafter Newark acquired possession and control of the premises by exercising the option granted under *N. J. S. A.* 54:5–53.1. Such option was granted by the Legislature to allow municipalities to gain revenue where property owners have been collecting rent and not paying taxes. The exercise of this option must carry with it certain duties and obligations. It could not have been intended that a municipality join those who milk properties, permitting them to deteriorate and thereby become uninhabitable, vacant, dangerous, and then abandoning them when the tenants are forced to vacate because of neglect.

In summary, the admitted fact pattern reveals that Newark took possession and control of a habitable, occupied multi-dwelling house and collected rents and profits therefrom. Three years later, in 1972, Newark abandoned the property in an admittedly deteriorated, dangerous and va-

cant condition, and now seeks by punitive measures to pass responsibility for repairs and safety to the absent nominal owner of record.

Assuming *arguendo* that the nominal owner is a defunct corporation or a person absent from the jurisdiction, does that mean the blight upon the community must remain? This court does not think so. Certainly three years of possession, management and retaining of rents and profits estops Newark from transferring responsibility by abandonment, followed by punitive prosecution.

The court finds as a fact that the subject matter complaints herein are chargeable to Newark and are not transferable to defendant Sue Corporation upon abandonment of the premises by Newark. I therefore conclude that the complaints have not been sustained beyond a reasonable doubt and they are dismissed.